IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TIMOTHY MILLWEE,<br><br>      Plaintiff,<br><br>v.<br><br>STATE OF UTAH DIVISION OF CHILD AND FAMILY SERVICES,<br><br>AMBER WILLIAMS,<br><br>JODI LNU,<br><br>      Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:11-cv-01172-DB-DBP<br><br>District Judge Dee Benson<br><br>Magistrate Judge Dustin B. Pead |

## I. INTRODUCTION

This federal civil rights matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B). Plaintiff is Timothy Millwee. Defendants are (1) the State of Utah Division of Child and Family Services ("DCFS"), (2) Amber Williams, a DCFS case worker, and (3) Jodi LNU ("Doe"), the woman who adopted Plaintiff's biological child, D.R.M.

Plaintiff alleges that, between January 1, 2011 and September 30, 2011, Defendants defied 42 U.S.C. § 1985, and other state laws, culminating in the termination of his parental rights over D.R.M. (Docket No. 3.) Specifically, Plaintiff claims Williams and Doe: (1) petitioned to terminate Plaintiff's parental rights based on unspecified, false grounds; (2) used sealed records to conduct background investigations of Plaintiff and other prospective, adoptive parents; (3) used the background investigations to define Plaintiff as a drug addicted and mentally deficient

parent; and (4) provided unspecified false testimony and documents to the juvenile court. (Docket No. 3 at ¶¶ 1-4, 12-13, 17, 19-21.) Plaintiff alleges DCFS supervised these acts. (Id. at ¶¶ 29-30.) To remedy these wrongs, Plaintiff seeks monetary damages. (Id. at 6.)

The following motions are before the Court: (1) Defendants' motion to quash service of process (Dkt. No. 5); (2) Plaintiff's motion to release State of Utah (Dkt. No. 25); (3) Williams' motion to quash service of a subpoena (Dkt. No. 5); (4) Plaintiff's motion for a civil injunction (Dkt. No. 21); (5) Plaintiff's motions for default judgment against Doe and Williams (Dkt. Nos. 10; 32; 33); (6) Plaintiff's motions to deny Doe and Williams immunity (Dkt. Nos. 22; 26); (7) Plaintiff's motion to deny Defendants use of the abstention doctrine (Dkt. No. 30); (8) DCFS's motion to dismiss (Dkt. No. 38); (9) Williams' motion to dismiss (Dkt. No. 40); and (10) Doe's motion to dismiss (Dkt. No. 42).

## II.     DEFENDANTS' MOTION FOR QUASHING SERVICE OF PROCESS

On February 13, 2012, Defendants filed a motion to quash insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). (Dkt. No. 5.) Thereafter, on April 16, 2012, all Defendants returned executed waivers of the service of summons. (Dkt. Nos. 17-20.) Because Defendants ultimately waived service, the Court **RECOMMENDS** their motion to quash ineffective service of process be found **MOOT**. (Dkt. No. 5.)

## III.    PLAINTIFF'S MOTION TO RELEASE DEFENDANT STATE OF UTAH

On May 9, 2012, Plaintiff filed a motion to release the "State of Utah from any and all liability within this proceeding with out [sic] prejudice . . . ." (Dkt. No. 25.) Defendants never responded to Plaintiff's motion. See DuCivR 7-1(d) ("Failure to respond timely to a motion may result in the court's granting the motion without further notice."). Because Defendants never

responded, the Court **RECOMMENDS** Plaintiff's motion to release the State of Utah be **GRANTED**. (Dkt. No. 25.)

### IV. STANDARD OF REVIEW FOR MOTION TO DISMISS

Defendants DCFS and Williams move to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1). Fed. R. Civ. P. 12(b)(1) permits a court to dismiss an action over which it lacks subject-matter jurisdiction. Additionally, all Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."

When evaluating a 12(b)(6) motion, the court presumes the well-pled facts in the plaintiff's complaint are true, and draws reasonable inferences from those facts in the plaintiff's favor. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility "refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1276 (10th Cir. 2009). To this end, a court should disregard conclusory allegations that lack supporting factual content. See Erickson v. Pawnee Cnty. Bd. of Cnty. Comm'rs., 263 F.3d 1151, 1154-55 (10th Cir. 2001).

### V. DCFS's MOTION TO DISMISS

Plaintiff claims DCFS conspired to violate his civil rights under 42 U.S.C. § 1985 when DCFS failed to properly oversee Williams and Doe. (Dkt. No. 3 at ¶¶ 29, 30.) DCFS moves to dismiss under 12(b)(1) and 12(b)(6) because: (1) DCFS is immune from suit under the Eleventh

Amendment; (2) DCFS is not a "person" as required under § 1985; and (3) § 1985 contains no *respondeat superior* right of action. (Dkt. No. 38.)

### A. DCFS is Immune From Suit Under the Eleventh Amendment

The Supreme Court has "consistently held" the Eleventh Amendment grants states immunity from unconsented "suits brought in federal courts." Edelman v. Jordan, 415 U.S. 651, 663 (1974). This immunity "extends" to "governmental entities that are 'arms of the state.'" Ambus v. Granite Bd. of Educ., 995 F.2d 992, 994 (10th Cir. 1993). "The arm-of-the-state doctrine" applies to "entities created by state governments that operate as alter egos or instrumentalities of the states." Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 574 (10th Cir. 1996).

The Utah Legislature established DCFS as a "division[] . . . within the Department of Human Services." Utah Code Ann. § 62A-1-105(2)(b). In turn, the Utah Legislature created the Department of Human Services "within state government . . . ." Id. § 62A-1-102. See also Schaffrath v. Thomas, No. 98-4030, 1999 WL 644806 (10th Cir. Aug. 25, 1999) (finding Utah Division of Family Services was an arm of the state entitled to Eleventh Amendment immunity).

Based on the law above, the Court agrees with DCFS's position that, as a Utah state instrumentality, it is immune from federal suit. (Dkt. No. 39 at 2-3.)[1] Accordingly, the Court **RECOMMENDS** DCFS's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction be **GRANTED** on Eleventh Amendment grounds. (Dkt. No. 38.)[2]

---

[1] Plaintiff claims DCFS "previously waived" its "right to immunity in a direct exchange with the Federal Government for federal funding." (Dkt. No. 48-1 at 1.) However, Plaintiff fails to cite legal authority for this proposition. He further fails to provide evidence that DCFS received federal funding.

[2] Because the Court recommends granting DCFS's motion to dismiss on Eleventh Amendment grounds, it will not address DCFS's remaining arguments for dismissal.

## VI. PLAINTIFF'S MOTION TO DENY WILLIAMS IMMUNITY

On May 9, 2012, Plaintiff filed a preemptive motion to deny Williams a qualified immunity defense. (Dkt. No. 26.)[3] Because Williams never responded to Plaintiff's motion, he believes she waived her right to use a qualified immunity defense. (Dkt. No. 45 at 2.) However, on July 13, 2012, Williams filed a timely motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), in which she appropriately asserted immunity. As such, the Court **RECOMMENDS** Plaintiff's motion be **DENIED**. (Dkt. No. 26.)

## VII. WILLIAMS' MOTION TO DISMISS

Williams seeks dismissal for the following reasons: (1) Plaintiff failed to comply with the Utah Governmental Immunity Act ("UGIA") regarding his state law claims; (2) Plaintiff's complaint fails to state claims upon which relief can be granted; (3) Williams has absolute and qualified immunity; and (4) the Rooker-Feldman and collateral estoppel doctrines bar Plaintiff's claims. (Dkt. No. 40.)[4]

### A. Plaintiff's State Law Claims Against Williams

Plaintiff alleges Williams, as a DCFS caseworker, committed the following state violations: (1) she acted as an accomplice to felony larceny; (2) she failed to report felony larceny; (3) she tampered with a sealed record in violation of Utah Code Ann. § 76-6-504; and (4) she violated

---

[3] Plaintiff claims Defendant Williams' use of immunity should be prohibited because she violated Utah Code Ann. § 63G-7-902(2)(a) when she failed to prove she was qualified to be represented by the Utah Attorney General's Office. Utah Code Ann. § 63G-7-902(2)(a) governs relations between a governmental entity and its employees. It does not allow third parties, like Plaintiff, to challenge a government employee's legal representation, or lack thereof.

[4] The Court believes Williams' motion to dismiss should be granted on UGIA grounds, for failure to state a claim, and for qualified immunity. As such, the Court does not address Williams' arguments regarding absolute immunity, the Rooker-Feldman doctrine, or collateral estoppel.

the Utah Public Officers and Employees Ethics Act ("POEEA"), the DCFS Code of Ethics, and the Juvenile Court Rules of Procedure. (Dkt. No. 3 at ¶¶ 12-16, 18, 22-28.)

### B. Under UGIA, the Court Lacks Subject Matter Jurisdiction over Plaintiff's State Law Claims Against Williams

UGIA requires a person with a claim against a governmental employee to first file a written claim notice with the employee's governmental entity. See Utah Code Ann. § 63G-7-401(2). When the entity denies the claim, the person may file suit. Id. § 63G-7-403(1)(a), (2)(a). If the person files suit before the entity denies his claim, the district court lacks subject matter jurisdiction over the action, and should dismiss it. See Hall v. Utah State Dep't. of Corr., 24 P.3d 958 (Utah 2001).

Plaintiff submitted a written claim notice on October 29, 2011, and an amended notice on November 2, 2011. (Dkt. Nos. 41-4; 41-5.) He prematurely filed federal suit on December 15, 2011, before his claim notices were denied. (Dkt. No. 3.) As such, the Court agrees with Williams that, under UGIA, it lacks subject matter jurisdiction over Plaintiff's state law claims. (See Dkt. No. 41 at 19-20.) Therefore, the Court **RECOMMENDS** Williams' 12(b)(1) motion to dismiss Plaintiff's state law claims be **GRANTED** on UGIA grounds. (Dkt. No. 40.)

### C. Alternatively, Plaintiff's State Law Allegations Fail to State a Claim Upon Which Relief can be Granted

In the alternative, the Court **RECOMMENDS** Williams' 12(b)(6) motion to dismiss Plaintiff's state law claims be **GRANTED** because Plaintiff failed to demonstrate he possesses a private right of action to enforce the state violations he mentions. (Dkt. No. 40.)[5] See Cent.

---

[5] In the caption of Plaintiff's complaint, he lists "Filing a False Complaint," and "Unlawful Prosecution" as additional causes of action. (Dkt. No. 3 at 1.) However, the body of Plaintiff's complaint does not tether these causes of action to any legal provision he claims was violated. (See Id. at ¶¶12-13, 17, 19-21.) As such, the Court does not consider these causes of action independently of Plaintiff's § 1985 claim.

Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."); Kaw Nation v. Springer, 341 F.3d 1186, 1191 (10th Cir. 2003) (stating federal larceny statute creates "penal safeguards" rather than "civil rights of action."); Utah Code Ann. § 76-6-504 ("Tampering with records is a class B misdemeanor."). See also Utah Code Ann. § 67-16-12 (indicating POEEA violations are punished by employment termination or criminal penalty); Jenkins v. Swan, 675 P.2d 1145, 1152 (Utah 1983) (finding plaintiff citizen lacked standing to enforce POEEA); Utah Department of Human Services Policy and Procedures, http://hspolicy.utah.gov/files/dhs/2-%20Personnel/2-3-%20Code%20of%20Ethics.pdf (noting DCFS ethics violations are punished by the Department of Human Services via corrective or disciplinary action). Further, Williams persuasively observes "[t]he Utah Juvenile Court Rules of Procedure [] are guidelines that govern conduct and practice in those courts. A violation of those rules is not independently actionable." (Dkt. No. 41 at 8.)

### D. Plaintiff's 42 U.S.C. § 1985 Allegation Fails to State a Claim Upon Which Relief Can be Granted

#### i. § 1985 Requirements

42 U.S.C. § 1985 is a civil rights provision. To prove a § 1985(3) violation,[6] a party must show: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).

Additionally, the conspirator's action must involve "some racial, or perhaps otherwise class-based, invidiously discriminatory animus . . . ." Griffin v. Breckenridge, 403 U.S. 88, 102

---

[6] 42 U.S.C. §§ 1985(1) and (2) do not apply to Plaintiff. They relate to preventing officers from performing duties, obstructing justice, and intimidating parties, witnesses, and jurors.

(1971). That is, a plaintiff must show the conspirator targeted him "because of" his membership in some class, and "the criteria defining the class were invidious." Lessman v. McCormick, 591 F.2d 605, 608 (10th Cir. 1979).

Notably, neither the Supreme Court nor the Tenth Circuit has recognized an invidious basis other than race. See Griffin, 403 U.S. at 102 n.9; Paris v. Sw. Bell Tel. Co., No. 03-5079, 2004 WL 790299, at *4 (10th Cir. Apr. 14, 2004) (holding that "[t]o state a claim under § 1985(3), a plaintiff must show . . . a conspiracy, motivated by racially-discriminatory animus . . . ."); Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985) (stating § 1985(3) was intended "to provide redress for victims of conspiracies impelled by a commingling of racial and political motives."); Lessman, 591 F.2d at 608 (noting other circuit courts interpreting "class" under § 1985 "have stayed close to the areas protected by the First Amendment.")

## ii. **Plaintiff's § 1985(3) Claim**

Plaintiff alleges Williams violated § 1985(3) when she conspired with Doe to "deprive him of his constitutional right to due process and the right not to be discriminated againts [sic] by social class." (Dkt. No. 3 at ¶ 1.) As to social class, Plaintiff claims Williams "painted [him], unlawfully as a drug addicted and mental deficent [sic] parent and father . . . ." (Id.)

## iii. **Plaintiff's § 1985(3) Claim Fails to Include a Requisite Racial or Class Group**

Given the Supreme Court and Tenth Circuit precedent above, the Court agrees with Williams, in that Plaintiff's failure to allege Williams targeted him because of race renders his § 1985(3) claim insufficient. (Dkt. No. 41 at 15.) Even assuming this Court accepted a class-based claim, Plaintiff fails to cite authority indicating that drug addicted, mentally deficient parents constitute a protected class for § 1985(3) purposes. See United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 826 (1983) (finding conspiracy motivated by

economic animus insufficient); Nielson v. Legacy Health Sys., 230 F. Supp. 2d 1206, 1211 (D. Or. 2011) (determining divorced fathers seeking custody of children did not constitute § 1985 protected class); Humphrey v. Ct. of C.P., 640 F. Supp. 1239, 1243 (M.D. Pa. 1986) (holding the same); King v. Keller, No. 06-4001-SAC, 2006 WL 1517765, at * 5 (D. Kan. May 30, 2006) ("The plaintiff offers no authority for the notion that parents of a particular economic class with children subject to a state court's custody orders and supervision constitute a protected class."). Therefore, the Court **RECOMMENDS** Williams' 12(b)(6) motion to dismiss Plaintiff's § 1985(3) claim be **GRANTED** on these grounds. (Dkt. No. 40.)

### E. Alternatively, Williams is Entitled to Qualified Immunity from Plaintiff's § 1985(3) Claim

#### i.     Qualified Immunity Requirements

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). To this end, "government officials" are generally shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Once a defendant asserts qualified immunity, "the burden shifts to the plaintiff" to rebut the defense. Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000). The plaintiff must first show the "defendant's actions violated a constitutional or statutory right." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must then show "the right at issue was clearly established at the time of the defendant's unlawful conduct." Id.

Defendant Williams argues she is entitled to qualified immunity from Plaintiff's § 1985(3) claim because Plaintiff failed to specify the constitutional or statutory right Williams violated, and failed to show any such right was clearly established when Williams violated it. (See Dkt.

No. 41 at 14-18.)  The Court agrees, and alternatively **RECOMMENDS** that Williams' 12(b)(6) motion to dismiss be **GRANTED** on these grounds.  (Dkt. No. 40.)

### 1. *Plaintiff Failed to Show Williams Violated a Constitutional or Statutory Right*

Notably, 42 U.S.C. § 1985(3) "provides no substantial rights itself."  United Bhd., 463 U.S. at 833.  Rather, "[t]he rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere."  Id.

Plaintiff broadly alleges Defendant Williams violated § 1985 when she "deprive[d] him of his constitutional right to due process and the right not to be discriminated againts [sic] by social class."  (Dkt. No. 3 at ¶ 1.)  Plaintiff's failure to identify a protected race or class, as discussed above, prevents him from showing that Williams' discrimination violated any constitutional or statutory right.  (See Dkt. No. 41 at 15.)  Indeed, Plaintiff's complaint fails to expressly tether the § 1985(3) claim to *any* underlying legal provision, as required by Medina.  (See Dkt. No. 3 at ¶¶ 1-4, 12-13, 17, 19-21) (discussing purely factual basis of § 1985(3) allegation.)

To the extent the Court may interpret Plaintiff's single reference to "due process" as the basis underlying his § 1985 claim, the Court concurs with Defendant Williams, that "the record from Juvenile Court makes clear [Plaintiff] received constitutionally appropriate process."  (Dkt. No. 41 at 17.)  See Patrick v. Miller, 953 F.2d 1240, 1244 (10th Cir. 1992) (noting procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner."); Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 635 (6th Cir. 2005) (finding a hearing comports with due process if the party is afforded the opportunity to "respond, explain, and defend.").

Plaintiff received notice of the juvenile court proceedings to terminate his parental rights.  (Dkt. No. 41-2 at 7) (discussing DCFS's attempts to serve Plaintiff notice.)  He participated in

the proceedings as a party and witness. (Id.) Plaintiff even filed a motion to dismiss the petition to terminate his rights, which the juvenile judge considered. (Id. at 2.) Plaintiff filed two claim notices demonstrating his intent to file a civil action regarding the termination. (Dkt. Nos. 41-4; 41-5.) These notices included allegations of wrongdoing identical to those Plaintiff raised in his federal complaint. (Dkt. Nos. 41-4; 41-5.) Plaintiff had the right to appeal the juvenile court's findings, but failed to file a timely appeal. (Dkt. No. 41-3.) In sum, his procedural rights were safeguarded.

### 2. *Constitutional or Statutory Right at Issue was not Clearly Established at the Time of Williams' Unlawful Conduct*

Even assuming Plaintiff tied Williams' § 1985 violation to an underlying constitutional or statutory right, the Court agrees with Williams that Plaintiff failed to show "his alleged rights were clearly established to the point that [] Williams would have understood that her actions violated these rights." (Dkt. No. 41 at 18.) That is, Plaintiff failed to cite *any* actionable legal authority to support his § 1985 claim. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) (explaining that for a right to be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) (noting a plaintiff may demonstrate his right "by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.").

## VIII. DOE'S MOTION TO DISMISS[7]

Plaintiff's allegations against Doe are nearly identical to, and overlap with, Plaintiff's allegations against Williams. (See Dkt. No. 3 at ¶¶ 1-2, 4, 6, 8, 10-13, 15-21.) Accordingly, Doe

---

[7] Plaintiff claims Doe's motion should be rejected because she is not entitled to representation by the Utah Attorney General. For the reasons discussed above, *supra* note 3, Plaintiff lacks standing to challenge Doe's legal representation.

filed a motion to dismiss Plaintiff's complaint nearly identical to Williams' motion to dismiss. (Dkt. No. 42.)  However, Doe does not assert UGIA or immunity.  Instead, she asserts Plaintiff's suit should be dismissed because she is not a state actor.

The Court previously recommended that Williams' motion to dismiss for failure to state a claim be granted where: (1) Plaintiff failed to demonstrate he had a private right of action regarding his state claims; and (2) Plaintiff's § 1985(3) claim failed to specify a valid race or class.  For these same reasons, the Court **RECOMMENDS** Doe's motion to dismiss Plaintiff's complaint against her be **GRANTED**.  (Dkt. No. 42.)  As such, the Court does not address Doe's state actor argument.

### IX.    RECOMMENDATIONS FOR REMAINING MOTIONS

Because this Court recommends dismissing Plaintiff's complaint against all Defendants, as discussed above, it **RECOMMENDS** the remaining motions in the case be found **MOOT**.  (Dkt. No. 5 (regarding Williams' motion to quash subpoena); Dkt. Nos. 10; 21; 22; 30; 32; 33.)

However, if the District Court disagrees with this Court's recommendations to dismiss Plaintiff's complaint, the Court makes the following, alternative recommendations for the remaining motions.

### X.     WILLIAMS' MOTION TO QUASH SUBPOENA

On January 31, 2012, Plaintiff mailed Williams a subpoena to produce certain documents. (Dkt. No. 6-2, Ex. 2.)  On February 13, 2012, Williams moved to quash the subpoena pursuant to Fed. R. Civ. P. 45(c)(3).  (Dkt. No. 5.)  She correctly asserts that "a party may not seek discovery from any source before the parties have conferred" at a Fed. R. Civ. P. 26(f) conference.  Fed. R. Civ. P. 26(d)(1).  The Court agrees, and **RECOMMENDS** that Williams' motion to quash the subpoena served on her be **GRANTED**.  (Dkt. No. 5.)

## XI. PLAINTIFF'S MOTION TO DENY IMMUNITY TO DOE

On May 22, 2012, Plaintiff filed a preemptive motion to deny Doe immunity. However, Doe has never asserted immunity. Therefore, the Court **RECOMMENDS** this motion be found **MOOT**. (Dkt. No. 22.)

## XII. PLAINTIFF'S MOTION TO DENY DEFENDANTS' USE OF ABSTENTION DOCTRINE

On June 14, 2012, Plaintiff filed a preemptive motion to deny all Defendants the use of the abstention doctrine as a legal defense. However, Defendants have never raised the abstention doctrine. As such, the Court **RECOMMENDS** Plaintiff's motion be found **MOOT**. (Dkt. No. 30.)

## XIII. PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT AGAINST WILLIAMS & DOE

Plaintiff filed two motions for default judgment against Doe (Dkt. Nos. 10; 33), and one motion for default judgment against Williams (Dkt. No. 32). The motions stemmed from these Defendants' alleged failure to respond to Plaintiff's service of process.

### A. Plaintiff's February 2012 Motion for Default Judgment Against Doe

After a plaintiff files his complaint with a federal court, he has 120 days to arrange for service of the complaint, and a summons, on each defendant. Fed. R. Civ. P. 4(c)(1).[8] On December 15, 2011, Plaintiff filed his complaint with the Federal District Court. (Dkt. No. 3.) On December 22, 2011, Plaintiff attempted to serve Williams and Doe via registered mail to DCFS headquarters. (Dkt. No. 4.) A DCFS secretary named Ginger Jacobson signed for the mail. (Id.) However, Ms. Jacobson averred she was not an authorized service agent. (Dkt. No.

---

[8] "On or after filing the complaint" with the court, a plaintiff "may present a summons to the clerk for signature and seal." Fed. R. Civ. P. 4(b). "If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." Id.

7.)[9] On January 27, 2012, Plaintiff filed an improper proof of service for all Defendants with the Court. (Dkt. No. 4.) Specifically, Plaintiff failed to attach a copy of an executed summons for Defendants. (Id.)[10]

On February 13, 2012, Plaintiff moved for default judgment against Doe because she allegedly failed to respond to Plaintiff's December 22, 2011 service of process. (Dkt. No. 10.) On February 14, 2012, Doe opposed Plaintiff's motion. (Dkt. No. 11.) She noted Plaintiff failed to properly serve her because his January 27, 2012 proof of service lacked the requisite copy of an executed summons. (Dkt. Nos. 4; 11 at 2.) She also pointed out Plaintiff's service violated Fed. R. Civ. P. 4(e) because Ms. Jacobsen lacked authority to accept service of process. (Dkt No. 6 at 5.) The Court agrees with Doe. As such, it **RECOMMENDS** Plaintiff's February 2012 motion for entry of default judgment against Doe be **DENIED**. (Dkt. No. 10.)

### B. Plaintiff's June 2012 Motions for Default Judgment Against Doe and Williams

On June 21, 2012, Plaintiff filed motions for default judgment against Doe and Williams. He argued they failed to respond to his complaint. (Dkt. Nos. 32; 33.) Both Defendants opposed. (Dkt. Nos. 35; 36.) They correctly noted they were not in default, because at the time Plaintiff filed the motion for default, they had until July 13, 2012 to file a response to Plaintiff's complaint. (Dkt. Nos. 35; 36.) Therefore, the Court **RECOMMENDS** Plaintiff's June 2012 motions for default judgment against Doe and Williams be **DENIED**. (Dkt. Nos. 32; 33.)

---

[9] Because Plaintiff chose to serve Williams and Doe via mail at DCFS headquarters, service had to be delivered to "an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C).

[10] "Unless service is waived, proof of service must be made to the Court." Fed. R. Civ. P. 4(l)(i). "Proof must be made by the server's affidavit." Id.

### XIV. PLAINTIFF'S MOTION FOR CIVIL INJUCTION

Plaintiff filed a motion for a civil injunction against D.R.M.'s adoption, and for a return of Plaintiff's parental rights. (Dkt. No. 21.) Defendants filed an opposition thereto, in which they interpret Plaintiff's motion as a request for a preliminary injunction. (Dkt. No. 46.)[11]

#### A. Procedural History Leading to Plaintiff's Current Motion

On November 28, 2011, the Third District Juvenile Court in Salt Lake County, Utah terminated Plaintiff's parental rights over D.R.M. (Dkt. No. 46-1.) On December 14, 2011, the Utah Court of Appeals dismissed Plaintiff's appeal. (Dkt. No. 46 at 2.) There is no indication Plaintiff pursued his appeal to the Utah Supreme Court. Rather, on December 15, 2011, Plaintiff filed a complaint with the Federal District Court. (Dkt. No. 3.) He accused Defendants of violating his civil rights, and sought purely monetary damages. (Id. at 6.)

On April 27, 2012, the Juvenile Court entered an order allowing Defendant Doe to adopt D.R.M. (Dkt. No. 46 at 2.) There is no indication Plaintiff appealed the adoption order in state court. Rather, on April 27, 2012, Plaintiff filed the present motion *in this Court* seeking a civil injunction against D.R.M.'s adoption, and for a return of Plaintiff's parental rights. (Dkt. No. 21.) Plaintiff seeks this relief "until this proceeding is concluded." (Id. at 4.)

---

[11] Defendants were required to file their response to Plaintiff's motion for civil injunction by July 13, 2012. (Dkt. No. 34.) However, Defendants filed their opposition on August 2, 2012, without seeking leave of court for this delay. As such, in Plaintiff's reply to his motion for civil injunction (Dkt. No. 47), Plaintiff asks the Court to consider Defendant's untimely opposition moot. "Failure to respond timely to a motion *may* result in the court's granting the motion without further notice." DuCivR7-1(d) (emphasis added). In this instance, the Court believes a complete analysis of Plaintiff's motion for civil injunction would be undermined by not considering Defendants' untimely opposition.

### B. Standard of Review for Preliminary Injunction

Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991). As such, the party requesting a preliminary injunction under Fed. R. Civ. P. 65 must establish:

> (1) he . . . will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.

Schrier v. Univ. of Co., 427 F.3d 1253, 1258 (10th Cir. 2005).

### C. Plaintiff Does not Warrant a Preliminary Injunction

For the reasons below, the Court finds Plaintiff failed to satisfy the Schrier factors. As such, it **RECOMMENDS** Plaintiff's motion for a civil injunction against D.R.M.'s adoption, and for a return of his parental rights, be **DENIED**. (Dkt. No. 21.)

#### i.     Plaintiff Will not Suffer Irreparably Injury Unless Injunction Issues

"The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003). Preliminary injunctive relief does not remedy "past harm but . . . protect[s] plaintiffs from irreparable injury that will surely result" without the injunction. Schrier, 427 F.3d at 1267.

Defendants persuasively argue "Plaintiff has not identified the irreparable harm he faces" where the juvenile court terminated his parental rights in November 2011, and finalized D.R.M.'s adoption in April 2012. (Dkt. No. 46 at 5.) In his reply, Plaintiff elaborates the injunctive relief will "prevent further damage to" him, "and his reputation as a good father." (Dkt No. 47.) However, Plaintiff failed to specify what "further damage" he fears, and the reputational harm likely already occurred when his parental rights were terminated.

### ii. Threatened Injury to Plaintiff Does not Outweigh Damage Injunction may Cause Defendants

Defendants argue "restoring Plaintiff's parental rights and disrupting a legal and valid adoption would create much more harm to the Defendants . . . than to Plaintiff." (Dkt. No. 46 at 7.) The Court agrees. Plaintiff's injuries, in the form of the termination of his parental rights, and D.R.M.'s adoption, have already occurred. He does not seek to redress these injuries in his complaint. (Dkt. No. 3.) The Court sees little utility in temporarily overturning the termination and adoption for the duration of Plaintiff's federal district court case. To do so would significantly harm Defendant Doe, who legally adopted D.R.M. It would also significantly interrupt D.R.M.'s care, which is already complicated by his numerous health problems. (Dkt. No. 46-1, Ex. 1 at 5) (outlining D.R.M.'s health issues such as hypospadias, pre-maturity, vitamin D deficiency, wandering eye, cystic fibrosis, hepatitis C, ventricle septal defect, and having only eleven ribs.)

### iii. Injunction Would be Adverse to Public Interest

The Utah Legislature has expressly noted "the state has a compelling interest in providing stable and permanent homes for adoptive children in a prompt manner, [and] in preventing the disruption of adoptive placements . . . ." Utah Code Ann. § 78B-6-102(5)(a). Likewise, the legislature has stated "adoptive children have a right to permanence and stability in adoptive placements," and "adoptive parents have a constitutionally protected liberty and privacy interest in retaining custody of an adopted child." Id. § 78B-6-102(5)(c)-(d).

Defendants cite these statutes to argue the relief Plaintiff seeks is adverse to the public interest emphasized by the Utah legislature. (Dkt. No. 46 at 5-7.) Specifically, Defendants argue "the effect of federal court intervention in [] state court custody and adoption orders would be to impose administrative oversight burdens on state courts and agencies, impose a temporary and

uncertain custody situation on the adoptive parents, and would severely curtail the parent-child relationship, and the stability of the adoptive family." (Id. at 6.) The Court agrees.

### iv. **Plaintiff has Little Likelihood of Success on the Merits**

For the reasons discussed above, recommending the dismissal of Plaintiff's complaint against all Defendants, the Court believes Plaintiff has little likelihood of success on the merits of his complaint. As such, he does not warrant a preliminary injunction.

## XV. RECOMMENDATIONS

Based on the analysis above, the Court **RECOMMENDS** the following to the District Court:

(1) Defendants' motion for quashing service of process be found **MOOT**. (Dkt. No. 5.)

(2) Plaintiff's motion to release State of Utah be **GRANTED**. (Dkt. No. 25.)

(3) DCFS's motion to dismiss be **GRANTED**. (Dkt. No. 38.)

(4) Plaintiff's motion to deny Williams immunity be **DENIED**. (Dkt. No. 26.)

(5) Williams' motion to dismiss be **GRANTED**. (Dkt. No. 40.)

(6) Doe's motion to dismiss be **GRANTED**. (Dkt. No. 42.)

(7) The remaining motions in the case be found **MOOT** in light of the dismissal of Plaintiff's complaint. (Dkt. No. 5 (regarding Williams' motion to quash subpoena); Dkt. Nos. 10; 21; 22; 30; 32; 33.)

(8) Alternatively, Williams' motion to quash service of a subpoena be **GRANTED**. (Dkt. No. 5.)

(9) Alternatively, Plaintiff's motion to deny Doe immunity be found **MOOT** where Doe never raised an immunity defense. (Dkt. No. 22.)

(10) Alternatively, Plaintiff's motion to deny Defendants use of the abstention doctrine be found **MOOT** where Defendants never raised an abstention defense. (Dkt. No. 30.)

(11) Alternatively, Plaintiff's motions for default judgment against Doe and Williams be **DENIED**. (Dkt. Nos. 10; 32; 33.)

(12) Alternatively, Plaintiff's motion for a civil injunction be **DENIED** (Dkt. No. 21).

Copies of the foregoing report and recommendation are being sent to all parties who are hereby notified of their right to object. Any objection must be filed on or before **March 18, 2013**. Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 4th day of March, 2013.

Dustin B. Pead
United States Magistrate Judge